Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★ ★



# OPINION

No. 04-10-00002-CR

Mario A. **OJEDA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kimble County, Texas
Trial Court No. 08-1730
Honorable Thomas F. Lee, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  February 16, 2011

AFFIRMED

Mario A. Ojeda was convicted of possession of more than four grams of methamphetamine with intent to deliver, and was sentenced to five years in prison. Ojeda appeals the judgment, asserting the evidence is legally and factually insufficient to support the guilty verdict. We hold the evidence is sufficient to support Ojeda's guilt as a party to the offense and affirm the trial court's judgment.

**BACKGROUND**

Arthur Leistikow, a deputy with the Kimble County Sheriff's office, testified that on September 10, 2008, his informant arranged for the purchase of methamphetamine from Ryan Lawson at the informant's house in London, Texas. Unknown to Lawson, Deputy Leistikow and several other deputy sheriffs had set up a video camera inside the house to record the purchase of the methamphetamine. Deputy Leistikow testified that Lawson arrived at the residence in a truck driven by the defendant, Mario A. Ojeda. Two other individuals, Angela Sanchez and Jason Doyle, were also in the truck. Lawson went alone into the house to make the delivery. Lawson was arrested after he delivered methamphetamine weighing 1.48 grams to the informant. Methamphetamine weighing 1 gram was found in Lawson's pocket.

Deputy Leistikow testified he then went outside and participated in the arrest and search of the people in the truck. Ojeda was sitting in the driver's seat and Angela Sanchez and Jason Doyle were seated in the back seat. Deputy Leistikow testified that Ojeda appeared to be "high" or intoxicated. The deputy testified he did not see any beer cans or other evidence linking Ojeda's condition to the ingestion of alcohol. However, marihuana residue was found on the floorboard under the driver's seat, and a package of gum containing 2.73 grams of methamphetamine was found on the console between the front seats. Deputy Leistikow identified a photograph of the contents of the gum package, which depicted ten small baggies containing methamphetamine. The deputy testified that methamphetamine was packaged in the small baggies to facilitate the sale of the drug.

A purse and "day-planner" were discovered on the floorboard of the back seat near Sanchez. Heroin and a syringe were found in the day-planner, and methamphetamine was found in both the purse and day-planner.[1] No drugs were found on Doyle or Ojeda.

Deputy Leistikow testified that Sanchez claimed ownership of all the drugs in the truck, as well as the drugs Lawson took into the house. He also testified that Lawson, Sanchez and Doyle admitted their involvement with the sale of the drugs, but that Ojeda denied any involvement with the methamphetamine. Deputy Leistikow also told the jury that Ojeda was the only one of the group who was employed.

Jason Doyle was called to testify by the State. He admitted he had pled guilty to a felony offense arising from his arrest on September 10, 2008, but stated there was no plea bargain in exchange for his testimony. He told the jury that he and Sanchez had been dating at the time of their arrest, but were now married. He testified they were both unemployed, and made their living selling drugs. On the morning of his arrest, he and Sanchez were at their house in Brady "getting high." They went to Menard, sold some drugs, and then went to Lawson's house. Later, they drove to London in Ojeda's truck. Doyle testified he did not know about the proposed drug sale in London until they were on their way to that town. However, he admitted that he and Sanchez provided the methamphetamine Lawson delivered to the informant. Doyle testified that as far as he knew, the only people involved with the sale of methamphetamine were himself, Sanchez, and Lawson.

Doyle testified that on the way to London, Ojeda expressed his concern that they "were going to a cop's house." Doyle also testified about a conversation that took place among the

---

[1]The State did not offer any evidence regarding the weight of the methamphetamine found in the purse or day-planner.

three men after they were arrested. Doyle stated that while they were in the holding cell, he accused Lawson of "setting us up," and testified Ojeda said "[k]ind of the same thing."

Lawson testified that he met with Doyle and Sanchez in Menard on the morning of September 10 because he was going to sell some methamphetamine for them. Later that afternoon, after conducting some transactions, Lawson saw Ojeda and asked him for a ride. Ojeda agreed and he drove Lawson, Doyle, and Sanchez across town, and then agreed to take them to London. Lawson testified the methamphetamine was concealed and Ojeda did not know about the intended drug delivery. Lawson also denied Ojeda expressed concern about "going to a cop's house." Lawson explained that Ojeda simply commented a few times about passing some cops on the road as they drove to London. Regarding the conversation in the holding cell, Lawson testified that Doyle accused him of setting up the "bust" and agreed that Ojeda may have done the same. However, Lawson denied Ojeda was ever part of the drug sale. He also testified that the gum package was not on the truck console when he got out of the truck in London to make the delivery. He stated that he had seen a gum package the morning of the day of arrest when Sanchez placed methamphetamine in a gum package.

The charge authorized the jury to return a guilty verdict if Ojeda acted as a principal or as a party to the offense. The charge also included an instruction on the criminal responsibility of co-conspirators for offenses committed in furtherance of the conspiracy. Ojeda did not request an accomplice-witness instruction. The jury returned a guilty verdict and the trial judge imposed a sentence of five years in prison. On appeal, Ojeda argues there are insufficient "affirmative links" connecting him to more than four grams of methamphetamine, the evidence is insufficient to prove he possessed any methamphetamine with intent to deliver, and the evidence is insufficient to convict him as a party.

**APPLICABLE LAW**

After Ojeda filed his brief raising both factual and legal sufficiency points, the Court of Criminal Appeals issued its opinion in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010). Although only four judges joined in the plurality opinion, a majority of the judges agreed it is no longer appropriate to conduct a separate review for factual sufficiency in criminal appeals. *Brooks*, 323 S.W.3d at 912; *id.* at 926 (J. Cochran concurring). Accordingly, we will review the evidence to determine whether it is legally sufficient under the *Jackson v. Virginia* standard. *Brooks*, 323 S.W.3d at 912. Under that standard, we review the evidence for legal sufficiency by looking at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We defer to the jury's determination of the weight to be given to contradictory testimonial evidence because resolution of the conflict is often determined by the jurors' evaluation of the witnesses' credibility and demeanor. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of the incriminating circumstances is sufficient to support the conviction." *Id.* The standard of review is the same for cases relying on either direct or circumstantial evidence. *Id.*

A person is a party to an offense if the offense is committed by the conduct of another for which the person is criminally responsible. TEX. PENAL CODE ANN. § 7.01(a) (West 2003). "A

person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). In reviewing the sufficiency of the evidence, we look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)(*quoting Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), *cert. denied*, 476 U.S. 1101 (1986)).

## DISCUSSION

To convict Ojeda as a party, the State was required to prove he aided and assisted another person or persons to possess with intent to deliver more than four grams of methamphetamine. The evidence established that Ojeda drove Lawson to a residence in London, where Lawson delivered more than one gram of methamphetamine to an informant. A reasonable jury could conclude this act aided and assisted the possession of the methamphetamine with intent to deliver.

The next issue is whether Ojeda's actions were done with "intent to promote or assist the commission of the offense." We conclude the State presented sufficient evidence from which the jury could reasonably infer such intent. Doyle testified that during the drive to London, Ojeda expressed concern that they were going to a "cop's house." He also testified that during the conversation in the holding cell, Ojeda accused Lawson of "setting up" the group. A reasonable jury could infer from these comments that Ojeda was involved in the group's activity and had knowledge of its illegal purpose. Further, the police found methamphetamine packaged for sale in a gum package next to Ojeda on the console between the front seats. The jury could

reasonably infer that Ojeda knew of the drugs' presence. And, based on Lawson's testimony that the gum package was not on the console when he went into the house in London and the drugs' proximity to Ojeda, the jury reasonably could have concluded that Ojeda placed the package on the console. Finally, Deputy Leistikow testified Ojeda appeared to be high at the time of his arrest. A reasonable jury could infer Ojeda was using drugs at the time of his arrest, lending credence to the contention he knew the purpose of the trip was to deliver drugs. The jury, as the arbiter of the credibility of the witnesses, was not required to believe the testimony that Ojeda had no knowledge of the trip's purpose and, based on the totality of the circumstances, reasonably could have concluded that Ojeda knew the purpose of the trip to London was to deliver methamphetamine.

Ojeda also argues the evidence is insufficient to show the amount of methamphetamine possessed with intent to deliver was more than four grams. We again disagree. Lawson took 1.48 grams of methamphetamine into the house for delivery and had an additional gram in his pocket. Doyle testified that he and Sanchez provided Lawson the methamphetamine to deliver. There was no testimony that the amount found in Lawson's pocket was for his personal use or not part of the methamphetamine Doyle and Sanchez gave him for the purpose of delivery. The jury was free to infer all the methamphetamine Lawson possessed (2.8 grams) was for the purpose of delivery. The gum box found on the console between the front seats of the truck contained an additional 2.73 grams of methamphetamine. Deputy Leistikow testified the drugs were packaged in ten small baggies, indicating they were for sale. Whether this methamphetamine was possessed by Ojeda, Doyle, Sanchez, or Lawson, or constructively possessed by all four, a reasonable jury could conclude it was possessed with intent to deliver. The evidence, together with the reasonable inferences therefrom, was sufficient for a reasonable

jury to conclude beyond a reasonable doubt that Ojeda aided and assisted in the possession with intent to deliver more than four grams of methamphetamine, and that Ojeda was therefore guilty as a party.

Ojeda also contends the evidence is insufficient to link him to the drugs or that he possessed more than four grams with intent to deliver. However, we need not decide these issues because the jury was authorized to convict Ojeda as a party. If a trial court's charge authorizes the jury to convict on alternative theories, the verdict of guilt will be upheld if the evidence was sufficient on any one of the theories. *Sorto v. State*, 173 S.W.3d 469, 472 (Tex. Crim. App. 2005), *cert. denied*, 548 U.S. 926 (2006). Because the evidence is sufficient to support the jury's verdict that Ojeda acted as a party, the State need not prove Ojeda personally possessed the methamphetamine. *See Powell v. State*, 194 S.W.3d 503, 506-07 (Tex. Crim. App. 2006) (holding person can be convicted as party to offense of burglary even though he does not enter the building).

## CONCLUSION

The judgment of the trial court is affirmed.


Steven C. Hilbig, Justice


Publish